IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ROKERRIA G.D.

                Plaintiff,

vs.                                                       Case No. 19-CV-06-JED-FHM

ANDREW M. SAUL,
Commissioner of Social Security
Administration,

                Defendant.

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation. For the reasons sets forth below, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied.

---

[1] Plaintiff's February 23, 2016, application for Title XVI disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Deirdre O. Dexter was held January 24, 2018. By decision dated March 26, 2018, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on November 1, 2018. The decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

See *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 20 years old on the alleged disability onset date and 22 years old on the date of the ALJ's denial decision. She has a high school education, took a culinary arts course through a job training program, and formerly worked as a fast food carhop and receptionist. In her disability report, Plaintiff alleged that she was disabled due to back pain, arthritis in both hands, migraines, and thyroid problems. [R. 203]. Plaintiff's application and disability reports did not mention, however, that her allegations of arthritis stem from a congenital thumb deformity. [R. 200, 203, 230]. Essentially, Plaintiff was born without thumbs. [R. 444-47].

Plaintiff did not want to answer questions about her medical history during the application interview. [R. 200]. The doctors who reviewed Plaintiff's application and

2

medical records at the initial and reconsideration[2] stages did not note the deformity, ostensibly because it was not mentioned in the medical records Plaintiff presented for review.  [R. 84-89, 90-97].  At the hearing, Plaintiff's counsel advised the ALJ that Plaintiff received child disability benefits for her congenital thumb deformity.  [R. 41].

Only two reports in the entire medical record made available to the ALJ make note of Plaintiff's congenital thumb deformity.  First, in December 2016, three months after the denial on reconsideration, an emergency room physician treating Plaintiff for a ruptured ovarian cyst listed "Polysyndactyty BL" in the review of Plaintiff's musculoskeletal system. [R. 356]. Second, less than two weeks before the ALJ hearing, Plaintiff underwent a consultative examination (at her attorney's request) with Dr. Kenneth Trinidad.  [R. 438-49].  Dr. Trinidad's examination focused on Plaintiff's complaints of lower back pain and her congenital thumb deformity.  He noted significant limitations in her ability to lift, carry, grasp, handle, and finger, and he opined that Plaintiff would likely be unable to return to the work force for the next year, if not indefinitely.  [R. 439, 441-43].

Despite the lack of treatment related to Plaintiff's congenital thumb deformity and despite her failure to raise the existence of this impairment until the ALJ hearing stage, Plaintiff alleges on appeal that it is this impairment that drives her disability.  [Dkt. 13].

## The ALJ's Decision

The ALJ determined that Plaintiff retains the residual functional capacity to lift, carry, push or pull up to 5 pounds frequently and 10 pounds occasionally, sit for up to 6 hours of

---

[2] Plaintiff retained counsel to assist her on May 16, 2016, two weeks after the initial denial.  [R. 102-04].  Plaintiff's counsel did not raise the congenital thumb deformity on reconsideration.  [R. 105-07].

3

an 8-hour workday, stand and/or walk up to 6 hours in an 8-hour workday. Her need to change positions can be accommodated through the standard 15-minute breaks in the morning and afternoon and a 30-minute lunch break. Plaintiff is able to frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; occasionally kneel; and occasionally handle or finger. She cannot work in an environment with concentrated exposure to dust, odors, fumes, or pulmonary irritants. [R. 16].

Based on the testimony of a vocational expert, the ALJ determined that Plaintiff cannot return to her past relevant work as a telephone answerer as it is generally and actually performed. However, the ALJ concluded that could perform the sedentary, unskilled jobs of surveillance monitor (DOT 379.367-010; 92,000 jobs nationally) and callout operator (DOT 237.367-104; 40,000 jobs nationally). The case was thus decided at step five of the five-step evaluative sequence. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## **Plaintiff's Allegations**

Plaintiff asserts that the ALJ's residual functional capacity and Step 5 findings are not supported by substantial evidence for three reasons. First, Plaintiff argues that the ALJ did not properly account for all of Plaintiff's limitations, including pain, in the hypothetical to the vocational expert. Second, Plaintiff contends that the ALJ failed to link her residual functional capacity findings to specific evidence in the record and did not give a sufficient explanation for her findings. Third, Plaintiff argues that the ALJ failed to cite other jobs that amount to significant numbers in the national economy.

## Analysis

In her brief, Plaintiff argues that all of the ALJ's errors are related to the Step 5 findings. With respect to Plaintiff's first two points of error, however, it is clear that Plaintiff's argument is not a Step 5 argument but a Step 4 argument, in which Plaintiff essentially challenges the ALJ's residual functional capacity findings. This distinction is significant because a claimant bears the burden of proof at step 4, while the Commissioner bears the burden of proof at step 5. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

**Residual Functional Capacity Analysis**

Plaintiff argues that the ALJ's residual functional capacity findings are not supported by substantial evidence because the ALJ failed to include all of the limitations related to Plaintiff's congenital thumb deformity and the pain related to her other severe impairments and because the ALJ did not link her residual functional capacity findings to specific evidence in the record. The theme of Plaintiff's arguments is that the ALJ gave great weight to Dr. Trinidad's opinion but failed to include all of the limitations in that opinion in the residual functional capacity findings and that the ALJ found that Plaintiff had multiple severe impairments for which there are no corresponding limitations in the residual functional capacity findings.

Plaintiff's argument mischaracterizes both the ALJ's specific factual findings and the law in the Tenth Circuit. The ALJ did not simply give "great weight" to Dr. Trinidad's opinion. Rather, the ALJ discussed each functional limitation in Dr. Trinidad's opinion and explained her reasons for accepting or rejecting that opinion. The ALJ gave great weight

5

to Dr. Trinidad's assessment regarding Plaintiff's limited use of her hands for lifting, carrying, gripping, and fine manipulation, as those limitations were consistent with her congenital thumb deformity and the x-rays contained in the record. [R. 22]. The ALJ also gave great weight to Dr. Trinidad's limitations on foot controls, grasping, and fingering. [R. 23]. The ALJ also agreed with Dr. Trinidad's limitations on dust, fumes, and irritants but rejected the other environmental limitations as unsupported by the medical evidence. [R. 23]. The ALJ gave little weight to the remaining limitations related to Plaintiff's back pain and her ability to sit, stand, and walk, finding them inconsistent with Plaintiff's treatment records. [R. 23].

***The ALJ's residual functional capacity findings are supported by substantial evidence.***

A residual functional capacity finding is an administrative finding, not a medical opinion. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004); 20 C.F.R. § 416.945; SSR, 96-5p, 1996 WL 374183, at *2 (1996). The ALJ is not required to make "a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

In this case, the ALJ had no evidence from a treating physician regarding the impact of Plaintiff's congenital thumb deformity because Plaintiff was not receiving treatment for the impairment as a treatable condition. To the extent that Plaintiff was born with this condition and, over the course of her life, had developed ways to compensate for a lack of usable thumbs, the lack of medical evidence is, in some ways, understandable.

Dr. Trinidad described Plaintiff's vestigial thumbs as "essentially absence of her thumbs and no opposing thumb on either hand. This causes significant problems with

6

the overall functioning of her hands. She also has developed some 'arthritis' into both wrists." [R. 438]. Dr. Trinidad noted that these abnormalities "result in significant impairment of her hand function bilaterally" and "significantly alter[] her ability to do any lifting, gripping, or fine motor activities. This affects her ability to type or do fine assembly work." [R. 439]. He opined that Plaintiff could carry up to 10 pounds occasionally but Plaintiff's ability to grasp and finger "for repetitive movement" was limited. [R. 441-42]. Dr. Trinidad concluded that "the combination of [Plaintiff's] congenital abnormalities in her hands which resulted in absence of her thumbs and a chronic low back condition are such that they preclude her ability to re-entering the active workforce for the next 12 months and in all probability indefinitely." [R. 440].

The ALJ gave great weight to Dr. Trinidad's opinion regarding the use of Plaintiff's hands. The residual functional capacity finding for sedentary work is consistent with Dr. Trinidad's opinion that she could lift up to ten pounds occasionally.[3] [R. 16, 441]. The residual functional capacity also limited Plaintiff to occasional handling or fingering, which is also consistent with Dr. Trinidad's finding that Plaintiff has limited capacity for repetitive grasping and fingering. [R. 16, 442]. In reaching these findings, the ALJ noted Dr.

---

[3] The ALJ did reject Dr. Trinidad's opinion that Plaintiff could lift five pounds only occasionally, finding instead that Plaintiff could lift up to five pounds frequently. [R. 23]. The undersigned acknowledges that the ALJ did not identify the medical evidence in the record that contradicted Dr. Trinidad's opinion, but any error in this portion of the residual functional capacity is harmless error because the other work that the ALJ identifies at step 5 does not require frequent lifting and is consistent with Dr. Trinidad's opinion. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (holding that the ALJ's complete failure to evaluate a medical opinion was harmless error when the ALJ's residual functional capacity and step 5 findings were consistent with the medical opinion).

7

Trinidad's description of Plaintiff's "reduced grip and fine manipulation skills" and commented on the x-rays attached to his report.   [R. 22].

Plaintiff argues that Dr. Trinidad's opinion regarding Plaintiff's hand limitations required the ALJ to determine that Plaintiff could not perform any work, citing Dr. Trinidad's opinion that Plaintiff would not be able to return to work "for the next 12 months and in all probability indefinitely."   [R. 440].   The law on this point, however, is clear: the question of whether a claimant can perform any work is an issue reserved to the Commissioner – not a medical opinion – and will not be given controlling weight or special significance. *See* 20 C.F.R. § 416.927(d)(1).

The ALJ properly assessed the medical evidence regarding the limitations on the use of Plaintiff's hands, and her residual functional capacity findings are supported by substantial evidence.

### *The ALJ also properly assessed Plaintiff's complaints of pain associated with her severe impairments.*

Plaintiff also argues that the ALJ failed to include limitations to accommodate Plaintiff's complaints of pain from osteoarthritis and migraine headaches.   Plaintiff contends that, because the ALJ found that these issues qualified as severe impairments, the ALJ was required to include limitations in the residual functional capacity findings.

Plaintiff did not cite her congenital thumb deformity as a reason for her disability, and as explained above, other than Dr. Trinidad's consultative examining opinion, the medical record contains only two passing references to the impairment.   Instead, she alleges pain and osteoarthritis stemming from her congenital thumb deformity, but she never sought treatment, and Dr. Trinidad did not note any evidence of arthritis in his

8

examination. The only "evidence" is Plaintiff's subjective complaint to Dr. Trinidad, and even his report puts the term arthritis in quotation marks, signaling that the claims of pain are not an official diagnosis. [R. 422]. Dr. Trinidad took into account Plaintiff's complaints of pain in his opinion and medical source statement. [R. 422-29].

The ALJ adopted Dr. Trinidad's limitations on the use of Plaintiff's hands, and the residual functional capacity is consistent with those limitations. Accordingly, the ALJ properly assessed the impact of Plaintiff's pain on her ability to perform work. To the extent Plaintiff alleges additional limitations, there is no evidence to support those complaints, and the ALJ was not required to impose additional limitations.

The ALJ also was not required to include additional limitations with respect to Plaintiff's complaints of migraines. A severe impairment at step two may not result in additional limitations at step four if the ALJ adequately explains her reasons for doing so. *See Hambry v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008); *Timmons v. Barnhart*, 118 F. App'x 349, 353 (10th Cir. 2004). In this case, the ALJ explained why no additional limitations were necessary to accommodate Plaintiff's migraines. The ALJ noted that Plaintiff sought treatment twice for headaches – once in April 2016 and once in August 2016. [R. 18-19]. Both times, Plaintiff responded well to medication and was quickly sent home. The infrequency of Plaintiff's migraines and her satisfactory response to medication supports the ALJ's decision not to impose additional limitations on Plaintiff's residual functional capacity. *See Boucher v. Astrue*, 371 F. App'x 917, 922 (10th Cir. 2010) (holding that where a claimant's severe impairment is controlled by medication, an ALJ is not required to include any limitations in the residual functional capacity finding).

Plaintiff then argues that the ALJ erred by failing to consider the impact of Plaintiff's pain on her ability to concentrate. In support, Plaintiff cites her initial interview with an agency worker, which occurred via telephone, in which the claims representative noted that Plaintiff seemed distracted. [R. 200]. Plaintiff attributes that distraction to pain.

The ALJ is required to consider the entire record, but she is not required to discuss every piece of evidence in the record. *See Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir.1996) (holding that "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." (internal citation omitted)). As the Tenth Circuit has held, where "the ALJ indicates [s]he has considered all the evidence our practice is to take the ALJ 'at [her] word.'" *Wall v. Astrue*, 561 F.3d 1038, 1070 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).

Here, the ALJ stated that she considered the entire record, which would include the statement from the claims representative during the first interview. [R. 16]. Plaintiff cites to the interview notes in her brief but fails to include the entire statement from the claims representative. That note states, in full, that Plaintiff "was preoccupied throughout the interview. Seemed very distracted and unconcerned. Had to be told to turn the music down and keep the noise down constantly. As the interview progressed [Claimant] became agitated and did not wish to answer any questions about her medical care." [R. 200].

10

This statement indicates that it was background noise and indifference, rather than pain, that caused Plaintiff to be distracted. Additionally, the undersigned's review of the record shows no other evidence that pain would impact Plaintiff's ability to concentrate. Plaintiff completed a GED and a culinary arts certificate through a job training program. [R. 204]. Plaintiff did not raise the issue at the hearing. [R. 35-83]. Dr. Trinidad did not discuss pain in his assessment of Plaintiff's hands. [R. 438]. He noted only tenderness in Plaintiff's lumbar spine, although he did record Plaintiff's subjective complaints of back pain. [R. 438-39]. Given the complete lack of evidence to support Plaintiff's argument that pain interferes with her ability to concentrate, the undersigned finds that the ALJ did not err in failing to discuss the claims representative's statement.

***Step Five Findings***

Plaintiff argues that if the ALJ had imposed all the limitations she alleges, the jobs that the ALJ cited would be unavailable. This argument fails because the ALJ did not err in assessing Plaintiff's residual functional capacity.

Plaintiff also argues that the job of callout operator is inconsistent with the ALJ's residual functional capacity findings because, according to the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, the job of callout operator requires "medium" finger dexterity, described as capability associated with the middle 1/3 of the population. *See* 1991 WL 672186 (1991). That same description of the job, however, requires low manual dexterity, and the overall handling and fingering requirements of the job is only occasional, which is consistent with the ALJ's residual functional capacity findings. The undersigned finds no apparent conflict between the job

requirements of callout operator and Plaintiff's ability to perform occasional handling and fingering. See Social Security Ruling 00-04p, 2000 WL 1898704. Moreover, the vocational expert testified that Plaintiff could perform the job, even with the functional limitations associated with her congenital thumb deformity and testified that there was no conflict between his testimony and the DOT. Accordingly, the ALJ properly found that Plaintiff could perform the job of callout operator.

Finally, Plaintiff argues that, even if both jobs are available, 132,000 jobs in the national economy is insignificant to qualify as a "significant" number. The Tenth Circuit has declined to create a bright line test for what qualifies as a significant number of jobs. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). The Tenth Circuit has held that 152,000 jobs is a significant number of jobs in the national economy, but that number is not a floor. *See Stokes v. Astrue*, 274 F. App'x 675 (10th Cir. 2008). Instead, the ALJ should consider any relevant factors, and "'[t]he decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Trimiar*, 966 F.2d at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). Moreover, where the ALJ's decision is supported by substantial evidence, the court need not "strain at numbers" when assessing whether a specific number meets the requirement for a significant number of jobs. *Id.* at 1332. This is not a case in which some jobs have been eliminated, requiring remand for the ALJ to determine in the first instance whether a particular number of jobs is significant. Here, the ALJ determined that 132,000 jobs is a significant number, and Plaintiff has failed to establish otherwise.

## **Conclusion**

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before September 14, 2020.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 31st day of August 2020.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE