UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROKERRIA G.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-CV-0006-CVE-CDL |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is the report and recommendation (Dkt. # 19) of United States Magistrate Judge Frank H. McCarthy recommending that the Court affirm the Commissioner's decision to deny plaintiff's application for Title XVI disability benefits. Plaintiff filed a timely objection (Dkt # 20), and the defendant filed a response (Dkt. # 23).

**I.**

Plaintiff is a 24-year-old woman who was 20-years old at the time of her initial application for disability benefits. Dkt # 10, at 84. She alleges disability as of the date of her application for benefits, February 23, 2016. Id. at 17, 84. In her initial disability application, she alleged disability due to back pain, arthritis in both hands, migraines, and thyroid problems. Id. at 17. Though not listed as a separate disabling impairment in the application, plaintiff also has limited use of her hands due to a congenital abnormality that caused her to be born with "vestigial thumbs." Id. at 203, 439, 444–47.

---

[1] On July 11, 2021, President Biden named Kilolo Kijakazi, as acting commissioner of the Social Security Administration, replacing Andrew Saul.

On May 5, 2016, the Commissioner denied plaintiff's claim at the initial determination stage, after which she retained counsel and requested reconsideration. Id. at 12, 98, 102, 105. The Commissioner again denied her claim on September 1, 2016. Id. at 108–10. Plaintiff then filed a request for a hearing before an administrative law judge. Id. at 111–12. ALJ Deirdre O. Dexter conducted a hearing on January 24, 2018.

During the hearing, plaintiff testified that she lives with her mother and five-year-old daughter, leading to the following exchange:

> Q: And are you able to do things for your daughter, you know, help her get dressed, fix her things to eat, those kind of things?
> A: Half of the time, yeah, but most likely, my mom help me most of the time.
> Q: And so what kind of things can you do for your daughter?
> A: I can fix her a cup, like a cup of water, maybe a juice and like try to hand her a spoon and other than that, I basically help her like tie her shoes and put her shoes on, help her with underwears and help her get to the restroom.

Id. at 51. During her application process, plaintiff also reported that she cares for herself, but she needs help from her mother to dress and, when her hands hurt, to do her hair. Id. at 220. She reported that she prepares sandwiches, frozen dinners, and unspecified "meals," which can take several hours to prepare due to her limitations. Id. at 221.

Plaintiff also testified about her work history. Most recently she worked part time at a call center, but she was unable to properly handle the phones and keyboard "so they let [her] go." Id. at 53–54. In 2015-2016, she worked as a car hop at a drive-up restaurant but was fired after repeatedly dropping trays. Id. at 56, 62, 68. In 2014–2015, she held a job in another call center for one month. Id. at 55. In 2012, she had a summer job working as a receptionist for the Tunica County Board of Supervisors in Mississippi. Id. at 54, 58, 194. When asked why she was unable to work any longer, plaintiff said:

> [i]t's because of my hands. They'll cramp up as I try to hold things . . . or they'll stiffen up, that I can't be able to do the things I have to do. So I have to have someone around to be able to do help me in order for me to be able to do something.

Id. at 57.

X-rays showed that plaintiff's thumbs are little more than small, bony protrusions growing from the knuckles of her index fingers. Id. at 444–47. As a result of the deformity, plaintiff testified, her index fingers do not bend properly, so she uses them as the "thumbs" to grip things with her middle and ring fingers. Id. at 65. This allows her some functionality, she said, but it causes her chronic pain and limits her ability to carry objects for long periods. Id. at 63–66. She said that she has also been diagnosed with arthritis in both wrists and wears braces to limit their movement, but the braces are only "somewhat" helpful. Id. at 58.

The only medical record that includes substantial discussion of plaintiff's hand impairments is the Medical Source Statement of Kenneth Trinidad, D.O., a non-treating physician. Id. at 20, 438–47. During her examination, plaintiff reported difficulty lifting more than five pounds and loss of fine-motor movement, such as that required to button buttons, open bottle tops, and pick up coins. Id. at 20, 438. Dr. Trinidad found that these complaints were substantiated by his examination. Id. at 20, 438–43. He concluded that plaintiff's hand deformities cause "significant impairment of her hand function" and "significantly alter[] her ability to do any lifting, gripping, or fine motor activities," including the ability to "type or do fine assembly work." Id. at 439. He ultimately opined that (1) plaintiff can "occasionally" (i.e., up to one third of an eight-hour day) lift up to five pounds, and (2) her "use of hands for repetitive movement" is "limited" with respect to "grasping" and "fingering." Id. at 441–42.

3

Dr. Trinidad also noted that plaintiff suffers from "chronic ongoing low back problems" due to an injury she suffered when she was six. Id. at 439. A musculoskeletal examination revealed "tenderness and spasm at L5-S1 bilaterally." Id. Dr. Trinidad concluded that, due to plaintiff's hand deformity and back pain, she would be unable to reenter the work force. Id. at 440.

During the hearing, the ALJ posed a series of hypotheticals to a vocational expert in order to determine what jobs a person with plaintiff's education and experience could perform, given various limitations. Id. at 75–79. In her final hypothetical, the ALJ instructed the vocational expert to consider an individual with the following residual functional capacity (RFC):

> Please . . . assume that this hypothetical individual is able to lift/carry, push or pull up to five pounds frequently and ten pounds occasionally. Is able to sit for up to six hours in an eight-hour workday; is able to stand and/or walk up to six hours in an eight-hour workday; the need to change positions from sitting to standing or walking can be accommodated by the 15-minute morning and afternoons breaks and the 30-minute lunch period during an 8- hour workday. This individual is able to frequently climb ramps or stairs; is able to occasionally climb ladders, ropes or scaffolds or kneel. The job should not involve concentrated exposure to dust, odors, fumes or pulmonary irritants.
> . . . .
> [T]his hypothetical individual is able to occasionally handle or finger.

Id. at 77, 79. The vocational expert opined that a person with this hypothetical RFC would be able to perform the tasks of "surveillance monitor" and "call-out operator" as those positions are defined by the Dictionary of Occupational Titles (DOT). Call-Out Operator, DOT 237.367-014, 1991 WL 672186; Surveillance-System Monitor, DOT 379.367-010, 1991 WL 673244. The vocational expert testified that 92,000 surveillance monitor jobs and 40,000 call-out operator jobs existed in the national economy. Dkt. # 10, at 77, 79.

After the ALJ completed her hypotheticals, plaintiff's attorney posed a hypothetical of his own:

> I think this might be kind of close to the [ALJ's final hypothetical], but I want to go ahead and put it out there. Looking at an individual with no mental limitations, high school education, same past relevant work that you've discussed with the

4

>Court here today, limiting this individual to sedentary work, mainly because of lifting required of light work, looking at an individual with upper extremity limitations . . . as follows; looking at an individual that's not capable of any fine manipulation, this would be bilaterally because of no pinch strength or no use or no oppositional use of a thumb. We're also looking at an individual that's capable of occasional gripping, grasping and twisting of the hands, but it would be less than five pounds and that would on each hand, again, bilaterally. We're looking at an individual that's capable of frequently reaching in all directions. We're looking at an individual that without thumbs bilaterally, not able to use ordinary hand tools, pliers, screwdrivers and hammers, and we're also looking at an individual limited to pushing and pulling occasionally and again limit that to five pounds bilaterally.

Id. at 80–81. Asked if the additional limitations would "change the Judge's last hypothetical," the vocational expert testified that a person with the described RFC would be able to work only in the surveillance-monitor position. Id. at 81.

On March 26, 2018, the ALJ issued a written decision finding that plaintiff was not disabled within the meaning of the Social Security Act. Id. at 13, 24. At steps one and two of the analysis, the ALJ determined that plaintiff had not engaged in substantial gainful activity since February 23, 2016, and had severe impairments consisting of "vestigial thumbs, migraine, asthma[,] and osteoarthritis." Id. at 14–15. At step three, she found that these impairments did not equal the severity of any listed impairment. Id. at 15. At step four, the ALJ adopted an RFC consistent with the one she proposed in her final hypothetical to the vocational expert. Id. at 16.

In explaining her RFC determination, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements about "the intensity, persistence, and limiting effects of his or her symptoms . . . are inconsistent because a review of the medical evidence shows the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Dkt. # 10, at 18, 20. Specifically, the ALJ cited the fact that plaintiff "lives with family and cares for her daughter [and] provides her own personal care except that her mother

5

occasionally fixes her hair and helps her dress." Id. at 21. "She prepares meals, does laundry[,] and does some household cleaning. She shops in stores and can walk for 30 minutes before resting for 30 minutes." The ALJ also noted that plaintiff has worked after the alleged onset of her disability. Id.

> Regarding Dr. Trinidad's statement, the ALJ reasoned as follows:
>
> Dr. Trinidad's opinion related to the claimant's use of her hands is given great weight as this opinion is generally supported by the medical evidence. The description of the claimant's congenital issue with her thumbs, including her reduced grip and fine manipulation skills is confirmed by imaging in the file. See, e.g., Exhibit 8F. In contrast, Dr. Trinidad's opinions related to the claimant's back pain are given little weight. These opinions are not generally supported by the medical evidence of record and appear to be based on the claimant's report without objective evidence supporting the limitations opined. (Exhibit 8F).
>
> The medical source statement provided by Dr. Trinidad is given little weight as to the claimant's ability to sit, stand and walk. The ability to lift and carry to the extent it is consistent with sedentary exertion considered and given weight; however, the limitation of no frequent lift/carry is not consistent with the medical evidence and therefore given little weight. Dr. Trinidad's opinion regarding claimant's ability to use foot controls, grasp and finger is given significant weight, but the postural limitations are given little weight[.] The opinion of environmental limitations of dust, odors and fumes are given significant weight, but the remainder of environmental limitations are given little weight (Exhibit 8F, pages 4-6).

Id. at 22–23.

Ultimately, the ALJ concluded at step five of the analysis that plaintiff was not disabled within the meaning of the Social Security Act. Id. at 24. Citing the vocational expert's testimony, the ALJ found that plaintiff was capable of work as a surveillance monitor or call-out operator, occupations existing in significant numbers in the national economy. Because plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that a finding of "not disabled" was appropriate under the Commissioner's rules. Id.

Plaintiff asked the Appeals Council to review the ALJ's decision, but the Appeals Council found no basis to review the decision. Id. at 1–4. Plaintiff then filed this case seeking judicial review of the denial of her claim. Dkt. # 2.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. Fed. R. Civ. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. 28 U.S.C. § 636(b)(1); Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## III.

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits. See 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)). "Step one requires the claimant to demonstrate 'that he is not presently engaged in substantial gainful activity.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.2005)). "At step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan, 399 F.3d at 1261). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988)). "If a

claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient RFC to perform work in the national economy, given the claimant's age, education, and work experience. Id. (citing Hackett, 395 F.3d at 1171).

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine if the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

## IV.

Broadly stated, plaintiff argues (1) that the ALJ's RFC failed to properly account for the limitations caused by her hand deformity; (2) that the RFC should have included limitations related to plaintiff's pain; and (3) that the ALJ erred in finding that other work existed in "significant numbers" in the national economy. Dkt. # 20.[2]

### A.   RFC: Hand Limitations

The ALJ did not adequately explain her RFC finding as it relates to plaintiff's use of her hands. In determining a claimant's RFC, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *7. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. Furthermore, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Id. When the ALJ fails to include this reasoning, her RFC finding is not supported by substantial evidence. See Southard v. Barnhart, 72 F. App'x 781, 784–85 (10th Cir. 2003). Although purely technical omissions do not require remand, the ALJ's explanation must be such that a reviewing court can follow her reasoning and determine whether the correct legal standards were applied. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012).

---

[2]   Plaintiff divides her objection into four points of error: (1) "Evidence of Severe Congenital Thumb Deformity," (2) "Dr. Trinidad's Opinions," (3) "Claimant's Pain," and (4) "Job Numbers." Because points one and two both attack the ALJ's RFC finding as it pertains to plaintiff's ability to use her hands, which is also the focus of Dr. Trinidad's opinion, Court addresses them together.

Here, the ALJ failed to follow these directives with respect to her exertional finding that plaintiff can "lift, carry, push or pull up to 5 pounds frequently," and her nonexertional finding that plaintiff can "occasionally handle or finger." Dkt. # 10, at 16, 441.

1. *Exertional Finding:*

The ALJ did not adequately explain why her exertional limitation conflicted with that of Dr. Trinidad. The Commissioner evaluates occupations according to the degree to which certain physical demands are present: "never," "occasionally" (the activity exists up to one-third of the work day), "frequently" (between one-third and two-thirds of the day), or "constantly" (more than two-thirds of the day). See U.S. Dep't Lab., Emp. Training Admin., Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (SCO), app. C: Physical Demands (1993). Here, the ALJ found that plaintiff had the capacity to move five pounds "frequently," while Dr. Trinidad opined that plaintiff could do so only "occasionally." Dkt. # 10, at 16, 441.

In explaining this discrepancy, the ALJ asserted that the doctor's "limitation of no frequent lift/carry [was] not consistent with the medical evidence and therefore given little weight," but she did not identify any evidence contradicting this portion of his opinion. See id. at 23. Nor is it at all clear what this evidence would be. The only relevant medical evidence in the record, other than Dr. Trinidad's report, seems to be the X-rays, which the ALJ found to support the hand-related portion of Dr. Trinidad's opinion. Id. at 20. Because the Court can only guess as to the ALJ's reasons for rejecting Dr. Trinidad's opinion that plaintiff cannot "frequently" lift and carry loads of up to five pounds, the ALJ necessarily failed to adequately explain the conflict between her RFC and Dr. Trinidad's opinion.

This error was material because an exertional limitation in line with Dr. Trinidad's findings might have resulted in a different outcome. The DOT classifies the occupations of surveillance-

10

system monitor and call-out operator as "sedentary work," meaning that a worker must have the ability to exert up to ten pounds of force occasionally and "a negligible amount of force" "frequently." See SCO, app. C: Physical Demands; Call-Out Operator, DOT 237.367-014, 1991 WL 672186; Surveillance-System Monitor, DOT 379.367-010, 1991 WL 673244. Thus, had the ALJ adopted Dr. Trinidad's exertional limitation, it is possible that neither job would have been appropriate for plaintiff, resulting in a finding of "disabled."[3] On remand, the ALJ need not adopt Dr. Trinidad's opinion, but she must adequately explain her reasons if she decides to reject it.

    2.    *Nonexertional Finding*

The ALJ also failed to resolve an evidentiary ambiguity related to her nonexertional finding that plaintiff can "occasionally handle and finger." Dkt. # 10, at 16. The Commissioner evaluates occupations according to the degree to which they require reaching, handling, fingering, and feeling, with each activity requiring progressively finer usage of the upper extremities. SSR 85-15, 1985 WL 56857, at *7. Handling involves seizing, holding, grasping, turning or otherwise

---

[3] Most courts and ALJs appear to equate the ability to exert "negligible force" with the ability to move weights such as files or documents weighing up to five pounds. See, e.g., Valentin v. Berryhill, No. 16-cv-01071, 2017 U.S. Dist. LEXIS 166768, at *27, *29 (W.D. Mo. Oct. 10, 2017); Major v. Berryhill, No. 16-04296-CV, 2017 U.S. Dist. LEXIS 143876, at *3, (W.D. Mo. Sep. 6, 2017); Smith v. Saul, No. 18-CV-78, 2019 U.S. Dist. LEXIS 224780, at *7-8 (N.D. Iowa Dec. 9, 2019); Mannella v. Astrue, No. CV 06-469-TUC-CKJ (BPV), 2008 U.S. Dist. LEXIS 53669, at *23, *54 (D. Ariz. Feb. 20, 2008). Under this interpretation, it appears that plaintiff would be unable to perform even sedentary work if she were limited to lifting and carrying objects of up to five pounds only occasionally.

Some courts, however, have construed "negligible force" as something less than the ability to carry up to five pounds. See, e.g., Powell v. Astrue, No. SKG 10-02677, 2013 U.S. Dist. LEXIS 99568, at *22 (D. Md. July 17, 2013). And some vocational experts have testified that claimants can perform sedentary work even under a five-pound weight limitation. See Arredondo v. Colvin, No. CV 15-01927, 2016 U.S. Dist. LEXIS 93265, at *10 (C.D. Cal. July 18, 2016). On remand, if the ALJ adopts an "occasional" five-pound limitation, and the vocational expert testifies that plaintiff would still be capable of performing as a surveillance-system monitor or callout operator, the ALJ should ask the vocational expert to explain the apparent discrepancy. See SSR 00-04p, 2000 WL 1898704.

working primarily with the whole hand or hands, while fingering involves picking, pinching, or otherwise working primarily with the fingers. Id.

Here, the ALJ purported to rely on Dr. Trinidad's opinion in finding that plaintiff is capable of "occasionally" handling and fingering, but Dr. Trinidad made no quantitative findings regarding those activities, likely due to the format of the Medical Source Statement questionnaire. Unlike the portion of the form dedicated to exertional functions, which uses the Commissioner's never/occasionally/frequently/constantly scale, the portion of the form dedicated to "the claimant's use of hands for repetitive movement" leaves physicians only two options: "yes" the function is "limited," or "no" it is not. Id. at 441–42. Thus, although Dr. Trinidad indicated that plaintiff's abilities were "limited," it is unclear from his statement exactly how limited he found them to be. A person whose manual dexterity is "limited" may be capable of handling and fingering for a third of every workday, something less than that, or not at all. Given Dr. Trinidad's qualitative finding of "significant impairment of [plaintiff's] hand function," Dkt # 10, at 439, the ALJ should have explained why she resolved the ambiguity in favor of a quantitative finding that plaintiff is capable of "occasionally" handling and fingering.

Further explanation is required because a more restrictive nonexertional limitation might have changed the outcome. The DOT provides that the job of call-out operator requires "Finger Dexterity: Level 3," defined as that held by the middle one-third of the population, and "Manual Dexterity: Level 4," defined as that held by the lowest one-third of the population, excluding the bottom ten percent. Call-Out Operator, DOT 237.367-014, 1991 WL 672186. The position also requires handling and fingering "occasionally." Thus, had the ALJ been more descriptive regarding plaintiff's manual dexterity, or specified that plaintiff was capable of handling and fingering for a lesser duration, the occupation of call-out operator might have been beyond

plaintiff's RFC. Indeed, when plaintiff's attorney offered a hypothetical describing a person with no opposable thumbs who was not capable of any fine manipulation, the vocational expert testified that the person would be unable to work as a call-out operator. Id. at 80–81. On remand, the ALJ should either explain why Dr. Trinidad's opinion is consistent with a finding that plaintiff is capable of "occasionally" handling and fingering or amend plaintiff's RFC and proceed accordingly.

**B.    RFC: Pain**

Plaintiff argues that the ALJ failed to properly assess her "complaints of pain associated with her severe impairments." Dkt. # 20, at 5. Plaintiff's arguments regarding the effect of her pain on her ability to concentrate are without merit for the reasons explained by Judge McCarthy in the report and recommendation, see dkt. # 19, at 8–11, but the Court finds that the ALJ nevertheless erred by failing to properly evaluate the pain plaintiff allegedly suffers when using her hands for an extended period.

The Tenth Circuit has mandated a three-step analysis for evaluating a claimant's subjective complaints of pain. An ALJ must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

Brownrigg v. Berryhill, 688 F. App'x 542, 545 (10th Cir. 2017) (quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166–67 (10th Cir. 2012)); see also 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *3. The determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated

13

the individual's symptoms." Brownrigg, 688 F. App'x at 546 (quoting SSR 16-3p, 2017 WL 5180304, at *10).

Here, the ALJ concluded "the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms . . . are inconsistent because a review of the medical evidence shows the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Dkt. # 10, at 21. In support of this conclusion, the ALJ cited plaintiff's daily activities and the fact that plaintiff had worked after her alleged onset date. The ALJ also found that "there are inconsistencies regarding the claimant's physical limitations and the objective medical evidence." Id. This explanation was insufficient.

For one, although the ALJ stated that plaintiff's testimony was inconsistent with the medical evidence, she never identified the medical evidence she found to conflict with plaintiff's testimony. The Tenth Circuit has consistently rejected the use of such conclusory statements and boilerplate recitations in place of the detailed analysis required under Commissioner's rules. See Brownrigg, 688 F. App'x at 546. If plaintiff's testimony was not consistent with objective medical evidence, the ALJ should have clearly identified and explained the discrepency.

Moreover, the ALJ failed to adequately explain how the cited activities are inconsistent with plaintiff's alleged symptoms. Plaintiff testified that she gains some functional use of her hands by using her partially immobile index fingers as "thumbs" to grasp and manipulate objects but said that this cannot be sustained for very long without causing her pain. Dkt. # 10, at 65. The ALJ never explains how these complaints are inconsistent with plaintiff's testimony that she was, with the help of her mother, able to care for herself and her daughter. None of the activities plaintiff describes doing—making sandwiches or frozen meals, helping her daughter put on her shoes or

14

use the restroom, doing laundry, etc.—would require plaintiff to engage in the prolonged activity alleged to cause her pain. Nor are plaintiff's complained of symptoms obviously inconsistent with her brief, post-onset employment, the bulk of which consisted of training and ended in her being "let go" due, at least in part, to her inability to keep up with the required typing. Id. at 53–54.

Furthermore, although a claimant's daily activities and work history are proper factors to consider when evaluating her subjective symptoms, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) (citing Frey v. Bowen, 816 F.2d 508, 516 (10th Cir.1987)). The periodic performance of some household chores "does not establish that a person is capable of engaging in substantial gainful activity." Id. (quoting Frey, 816 F.2d at 516–17)). Thus, it was improper for the ALJ to discount plaintiff's testimony based on the minimal activities described. On remand, the ALJ should fully apply the Tenth Circuit's three-step analysis, explicitly identifying evidence, medical and nonmedical, that is inconsistent with plaintiff's reported symptoms.

C. **Numeric Significance**

Because the ALJ did not support her findings with substantial evidence and otherwise failed to explain her reasoning as required, the Court need not reach plaintiff's argument that the ALJ erred in finding that 132,000 available jobs was a "significant" number for the purposes of her step five finding. On remand, the ALJ's treatment of Dr. Trinidad's opinion and plaintiff's pain may affect plaintiff's RFC, which in turn might affect her ability to perform one or both of the occupations proposed for her. Given the relatively small number of available jobs that would remain if either occupation were eliminated, it may be necessary for the ALJ to consider the factors

relevant to the numeric significance inquiry. See Norris v. Barnhart, 197 F. App'x 771, 777 (10th Cir. 2006) (citing Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir.1992)).

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 19) is **rejected**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **reversed and remanded for further administrative proceedings**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to substitute Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, for Andrew Saul, defendant.

**DATED** this 26th day of July, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE